UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>v.<br><br>BRANDON YATES,<br><br>　　Defendant. | Case No. 1:21-cr-00116-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Brandon Yates's Motion to Dismiss Indictment. Dkt. 33. The United States opposes the Motion. Dkt. 39. The Court held oral argument on October 6, 2021, and took the matter under advisement. Upon review, and for the reasons set forth below, the Court DENIES the Motion.

## II. BACKGROUND

On September 5, 2002, Yates was convicted of misdemeanor domestic violence in the State of Idaho. Specifically, Yates pled guilty to violating Idaho Code § 18-918, domestic battery, in Ada County, Idaho, case number CR-FE-2002-37. Yates pled guilty to the misdemeanor domestic battery charge pursuant to a plea agreement that amended an original charge of one count of rape and one count of domestic violence in the presence of children to one count of misdemeanor domestic battery and one count of misdemeanor

battery.[1]

In March 2021, Yates was renting a room from his father, Dennis Yates ("Dennis"), in Mountain Home, Idaho. Dennis was on federal felony supervised release as a convicted felon and sex offender. Pursuant to the terms of his supervised release, Dennis was subject to "a search of his person, place of residence, automobile, as well as any objects or materials including computer systems and other types of electronic storage media devices." Dkt. 33, at 3.

On March 9, 2021, United States Probation Officers arrived at Dennis's home to conduct a probationary search. Prior to the search, Probation Officer ("PO") Ben Biddulph asked Yates if there was anything illegal inside the residence. Yates advised PO Biddulph that there was not. Yates was informed he was free to leave, and he left. After Yates left, Officers located a Savage Mark II .22 rifle in a soft case in the attic space above the garage of the home.

PO Biddulph asked Dennis about the .22 rifle. Dennis said he knew nothing about the firearm. PO Biddulph then called Yates and asked if there were any drugs, paraphernalia, firearms, ammunition, or anything else of concern or illegal in the residence. Yates stated there was some marijuana and a box of assorted ammunition that was his but again denied knowledge of any firearms, other ammunition, drugs, or paraphernalia at the residence.

---

[1] Yates claims his then attorney, Gar Hackney, told him that pleading to a misdemeanor would preserve his firearm rights. This is an incorrect statement of law considering applicable federal law. Even if *arguably* true as applied to Idaho law, there is no way to verify this assertion as Hackney is now deceased.

PO Biddulph called the Elmore County Sheriff's Office, and an Elmore County Deputy arrived and arrested Dennis for unlawful possession of the .22 firearm under Idaho Code. PO Biddulph then called Yates and told him he could come back to the residence. He also informed Yates that his father had been arrested for unlawful possession of a firearm.

Approximately twenty minutes later, Yates called PO Biddulph back and informed him he wanted to take responsibility for "any firearms" at the residence. When pressed about what "any firearms" might mean, Yates told PO Biddulph there was a .22 rifle in the attic above the garage. PO Biddulph asked Yates why he had not identified the firearm when originally asked and why he hadn't initially claimed ownership. Yates explained that he was unsure if he could legally possess the firearm because, while he was not a felon, he had a misdemeanor conviction for domestic battery in Idaho.

To "save his father," Yates provided an affidavit in which he took responsibility for ownership of the .22 rifle and acknowledged his father was not aware of it. *Id.* at 5. The charges against Dennis were dropped.

Roughly one week later, on March 15, 2021, PO Biddulph asked Yates to come to the United States Probation and Pretrial Services Office at the federal courthouse in Boise, Idaho for an interview.

Prior to the interview, law enforcement provided *Miranda* warnings to Yates. Yates then elected to engage in a conversation about the firearm with law enforcement.

Yates began by explaining to the agents that he hid the .22 rifle in the attic so that his father, who is prohibited from possessing a firearm, would not find it. Yates claimed to

MEMORANDUM DECISION AND ORDER - 3

have never fired the .22 rifle and stated he purchased it in a private sale for $200 approximately two years prior. He also explained that he was unsure of the interplay between state and federal law, but he claimed he could possess the firearm on federal land but not on Idaho state land under Idaho law.

A stamp on the barrel of the .22 rifle indicates it was manufactured in Canada before being imported and distributed by Savage Arms, Inc. in the State of Massachusetts.

A grand jury indicted Yates on April 14, 2021, for a sole count of violating 18 U.S.C. § 922(g)(9).

On August 6, 2021, Yates filed the instant Motion to Dismiss the indictment. Dkt. 33. Yates raises four challenges to his indictment. The United States opposes the Motion on all fronts.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), a defendant may bring a motion challenging the sufficiency of the indictment. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it: (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend"; and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The failure of an indictment to recite an essential element of a charged offense is a "fatal flaw requiring dismissal of the indictment." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999).

"[A]n indictment 'should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied.'" *United States v. Berger*, 473 F.3d 1080, 1103 (9th Cir. 2007) (quoting *United States v. King*, 200 F.3d 1207, 1217 (9th Cir. 1999)). In cases where an indictment "'tracks the words of the statute charging the offense,' the indictment will be held sufficient 'so long as the words unambiguously set forth all elements necessary to constitute the offense.'" *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (quoting *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir. 1989)). In reviewing a motion to dismiss an indictment under Rule 12(b)(3)(B), a court must accept the facts alleged in the indictment as true. *Winslow v. United States*, 216 F.2d 912, 913 (9th Cir. 1954).

### IV. ANALYSIS

The grand jury indicted Yates on one count of violating 18 U.S.C. § 922(g)(9), which provides:

> (g) [I]t shall be unlawful for any person
>     (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Yates raises four arguments in support of his motion to dismiss. The Court will address each in turn. Before doing so, however, the Court wishes to highlight the fact that Yates knows his motion will likely be denied. He admits that much of the caselaw on these matters is "against him," (Dkt. 33, at 13) or "squarely against [him]" (Dkt. 40, at 3); that his arguments are "not supported by current Ninth Circuit law" (Dkt. 33, at 14); and that

he realizes "[the] Court will likely rule against him" (*id*. at 13). Nevertheless, Yates asserts he needs to bring this motion "to preserve [his arguments] for appeal as the law develops." *Id*.

The Court appreciates Yates's recognition that the Court is bound by precedent which renders the outcome of his request all but sure. The fact is many of these arguments in relation to the applicability of § 922(g)(9) have been litigated almost to the point of exhaustion. That criminal defendants continue to raise objections to its application and legality is, in part, why the Court elected to hear oral argument and write a comprehensive decision on this matter today. While it is appropriate to make any legal argument that is *applicable* to a given case, it is not a productive use of the Court's time and resources to reiterate to defendants what they already seem to recognize as settled law.

Nevertheless, the Court takes the time today to memorialize (once again) its position on these oft-repeated arguments. Yates's four arguments are copied (verbatim) below, with the Court's analysis as to each.

- **A. The Idaho Constitution guarantees a higher level of protection for the possession of a firearm under the Tenth Amendment to the United States Constitution, thus Yates' indictment should be dismissed. (In the alternative, or as support, the Second Amendment, on its face, guarantees the right for Mr. Yates to possess the firearm).**

Yates begins by asserting that he "has higher rights as a misdemeanant under Idaho law" than those provided in § 922(g)(9) and that under the Tenth Amendment, the federal government cannot take away rights duly enacted by the state of Idaho. He also argues the Second Amendment gives him an unfettered right to possess a firearm.

MEMORANDUM DECISION AND ORDER - 6

Yates's first assertion is arguably correct when viewed in a vacuum. The Idaho Constitution, Article I, Section 11 outlines that an individual's rights to bear arms in Idaho can only be curtailed under limited circumstances, one of which is if a person is "a convicted felon." Idaho Const. Art. I, § 11.[2] Yates reminds the Court that he was never actually convicted of a felony and so his right to bear arms was never actually taken away. He goes on to claim that because his rights "were never suspended," and because the "right for misdemeanants to possess firearms [] is not addressed under federal law," he should be allowed to legally possess a firearm under Idaho law. Dkt. 33, at 9. Yates is wrong on both accounts.

Yates's right to bear arms may not have been suspended *under Idaho law*, but Idaho is a part of the United States and Idaho citizens are subject to federal law. Section 922(g)(9) applies to all citizens of the United States regardless of where they reside. Relatedly, while it is true that the Second Amendment is not written in terms of "felons" or "misdemeanants," the law is clear that § 922(g)(9) applies to anyone "who has been convicted *in any court* of a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9) (emphasis added). Yates does not dispute that he was convicted of a misdemeanor crime of domestic violence in a court of law. Thus, while *Idaho law* may not have prohibited Yates from possessing a firearm, *federal law* obviously did.

Returning to Yates's broader argument that § 922(g)(9) violates the Tenth

---

[2] Furthermore, the state of Idaho has outlined how convicted felons can have their rights restored—including their right to bear arms. If the felony conviction was of a certain type, the individual's rights are automatically restored upon discharge; other felonies must go through a "washing" process of reduction to a misdemeanor and an appeal to the commissions of pardons and parole; still other felonies preclude the restoration of gun rights all together. *See* Idaho Code § 18-310.

MEMORANDUM DECISION AND ORDER - 7

Amendment, the Court notes that this argument has been soundly rejected.

Article I of the Constitution grants Congress the power to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The Commerce Clause permits Congress to regulate, among other things, "objects in interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995). Included within § 922(g)(9) are three specific elements related to "interstate commerce." As such, the statute regulates an object in interstate commerce and is an appropriate use of congressional power. *United States v. Collins*, 61 F.3d 1379, 1383–84 (9th Cir. 1995) ("Because the statute [18 U.S.C. § 922(g)(1)] is a valid exercise of Congress' commerce authority, we conclude that the statute does not violate the Tenth Amendment.").

Yates contends he is not arguing there is a "conflict" between state and federal law, but rather that "federal law, under the Tenth Amendment, recognizes that rights not delegated to the Federal government are reserved to the States, and where the Idaho Constitution goes further in protecting firearm rights than the Federal Constitution, those rights are protected, even from the Commerce Clause." Dkt. 40, at 3. To some degree this is a distinction without a difference. In essence, Yates may not be asserting any "conflict" between state and federal law, but he is, nonetheless, arguing that the Idaho Constitution protects rights beyond what the federal government can protect, and that state law must govern in this case. Regardless, this argument has already been litigated and found to be incorrect. *See United States v. Minnick*, 949 F.2d 9, 11 (1st Cir. 1991) (a defendant's argument that state law voids federal law in gun possession was rejected as being "fully answered by the Supremacy Clause").

MEMORANDUM DECISION AND ORDER - 8

In sum, Yates's first argument is unavailing.

## B. 18 U.S.C. § 922(g)(9) is unconstitutional under the Second Amendment to the United States Constitution, either facially or as applied.

The Court has frequently dealt with this argument during sentencings or other criminal hearings and has addressed it at length in at least two written decisions.

In *United States v. Bartley*, the Court took up an as-applied challenge to the constitutionality of § 922(g)(9) and found it did not violate that specific defendants' Second Amendment rights. 400 F. Supp. 3d 1066, 1070 (D. Idaho 2019). On appeal, the Ninth Circuit recently affirmed in all respects. *United States v. Bartley*, 9 F.4th 1128, 1135 (9th Cir. 2021).

Around the same time, the Court took up another as-applied challenge and came to the same conclusion. *United States v. Schoendaller*, No. 1:18-CR-00179-DCN, 2019 WL 2746695, at *2 (D. Idaho July 1, 2019). In both decisions, the Court only briefly touched upon the argument that § 922(g)(9) is facially unconstitutional because that point is so well settled. Nevertheless, the Court briefly reviews both arguments here.

   *1. Facial Challenge*

Yates is correct that § 922(g)(9) burdens many individuals' Second Amendment rights. *United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013). However, this fact alone does not render the statute unconstitutional. It simply shifts the burden onto the government to explain why such a restriction is appropriate. The Ninth Circuit has consistently held that intermediate scrutiny applies to the burden § 922(g)(9) places on citizens. *Id.*; *see also United States v. Torres*, 911 F.3d 1253, 1263 (9th Cir. 2019); *Mai v.*

*United States*, 952 F.3d 1106, 1115 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2566 (2021).

The intermediate scrutiny test requires "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *Chovan*, 735 F.3d at 1139. In applying intermediate scrutiny to § 922(g)(9), the Ninth Circuit held that there is a strong government interest in preventing domestic gun violence. *Id*. Furthermore, there is a reasonable fit between preventing domestic gun violence and § 922(g)(9). *Id*. Domestic abusers frequently reoffend, they often use guns, and when they do there is a higher likelihood of death. *Id*. at 1140. Section 922(g)(9) prevents domestic gun violence by keeping guns out of domestic abusers' hands.

> As the Ninth Circuit explained:
>
> We hold that the government has [] met its burden to show that § 922(g)(9)'s prohibition on gun possession by domestic violence misdemeanants is substantially related to the important government interest of preventing domestic gun violence.
> Because § 922(g)(9) is supported by an important government interest and substantially related to that interest, the statute passes constitutional muster under intermediate scrutiny.

*Id.* at 1141. Accordingly, the Defendant's facial challenge fails. Section 922(g)(9) is not unconstitutional on its face.

2. *As-Applied Challenge*

In like manner, intermediate scrutiny also applies to individual challenges to § 922(g)(9)'s prohibition on domestic abusers possessing firearms. *Chovan*, 735 F.3d at 1139–40 (finding that it is "self-evident that the government interest of preventing domestic gun violence is important" and utilizing intermediate scrutiny on as-applied

MEMORANDUM DECISION AND ORDER - 10

challenge); *Schoendaller*, 2019 WL 2746695, at *3 (same).

And while the Court is not required to make an individualize assessment as to Yates—*see Mai*, 952 F.3d, at 1119 (determining that "the Second Amendment does not demand 'an individualized hearing' to assess Plaintiff's own personal level of risk" when it comes to applying § 922(g)(9)—the Court can do so here in short order.

Yates asserts that § 922(g)(9) is unconstitutional as applied to him because his conviction was "sixteen-and-a-half years old before he even purchased [the] firearm" and he had "never fired the .22." Dkt. 33, at 10.

As to the first assertion, the Ninth Circuit has answered that question in the negative:

> If Congress had wanted § 922(g)(9) to apply only to individuals with recent domestic violence convictions, it could have easily created a limited duration rather than lifetime ban. Or it could have created a good behavior clause under which individuals without new domestic violence arrests or charges within a certain number of years of conviction would automatically regain their rights to possess firearms. But Congress did not do so. . . . The breadth of the statute and the narrowness of these exceptions reflect Congress's express intent to establish a "zero tolerance policy" towards guns and domestic violence.

*Chovan*, 735 F.3d at 1142.

What's more, the fact that Yates has not fired the weapon (to date) is irrelevant. The crime at issue is for possession; actual use has nothing to do with it. Because the application of § 922(g)(9) as it relates to Yates's personal circumstances is substantially related to the government's important interest of preventing domestic gun violence, Yates's as-applied challenge fails.

    **C. As a result of *United States v. Rehaif*, 139 S. Ct. 2191, and the Fifth Amendment, the United States should be required to prove that Yates A) possessed the firearm, B) was a member of the class of persons prohibited from possessing**

MEMORANDUM DECISION AND ORDER - 11

**the firearm, and C) because the Idaho Constitution guarantees a higher right for a misdemeanant to possess a firearm, should be required to prove that a) Yates was aware both that he was prohibited by federal law-and b) that he was on federal land. Because the indictment failed to allege these elements, it should be dismissed.**

Section 922(g)(9) provides that certain persons are prohibited from possessing firearms. 18 U.S.C. § 924(a)(2) outlines the penalties for anyone who "knowingly violates" § 922(g)(9).

Prior to 2019, there was some confusion regarding the scope of the "knowledge" scienter in § 924(a)(2). Any confusion, however, was firmly settled in *Rehaif v. United States* where the United States Supreme Court concluded that in cases such as this, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. 2191, 2200 (2019).

Yates takes liberally from *Rahaif* and expresses criminal defendants' new hope that not only must the government prove that the person knew he possessed the firearm and knew he belonged to a category of persons prohibited from possessing a firearm, *but also* that he knew he could not actually possess a firearm. Regardless of whether criminal defendants "hope" this becomes the standard is irrelevant because it is not currently the standard. The Supreme Court was clear that the Government has to prove two things: that the person *knew* he possessed the firearm and *knew* he was barred from doing so based upon his status. The government does not, however, have to prove the person knew he was actually breaking the law.

The Ninth Circuit recently reiterated as much. When confronted with this

argument—that the government has to prove the individual knew he was prohibited from possessing a firearm—it explained that "based on the plain language of § 924(a)(2) and the Supreme Court's decision in *Rehaif*, the Government must prove only that [a Defendant] knew, at the time he possessed the firearm, that he belonged to one of the prohibited status groups enumerated in § 922(g)." *United States v. Singh*, 979 F.3d 697, 727–28 (9th Cir. 2020), *cert. denied sub nom. Matsura v. United States*, 141 S. Ct. 2671 (2021). This is a nuanced distinction, but an extremely critical one. The Government must first prove that Yates *knew* he possessed a firearm. There is little to misunderstand here. The Government must next prove that Yates *knew* he belonged to a category of persons (i.e., had a "status") that were prohibited from possessing firearms. However, within that element, the Government *need not* prove Yates actually knew he was breaking the law in possessing the firearm—just that he had a status that prohibited him from possessing one.

In this case, there is no doubt that Yates knew he possessed the firearm. He admitted as much to PO Biddulph on March 9, 2021, after the officers located the firearm and again to agents (after having been *Mirandized*) on March 15, 2021. Yates also admitted (again, in both circumstances) that he did not know if he was allowed to own a gun because of his prior domestic conviction—implicitly recognizing that he belonged to a group of persons (misdemeanant domestic abusers) that were prohibited from possessing firearms.[3]

---

[3] At oral argument, Yates referenced a 1999 District Court case out of Nebraska for the proposition that he was unaware his conduct was illegal. In *United States v. Ficke*, the court determined the defendant "simply did not know and did not receive fair warning that his conduct had *become* unlawful." 58 F. Supp. 2d 1071, 1075 (D. Neb. 1999) (emphasis added). This case is inapposite because (1) the law Yates is accused of violating was *in effect* at the time of his crime—unlike the defendant in Ficke, and (2) Yates has not claimed he did not have warning that possession a firearm was against the law. To be fair, Yates does not go so far
(Continued)

MEMORANDUM DECISION AND ORDER - 13

Yates asserts that because the indictment does not clearly "prove" the two elements outlined in *Rehaif*, it must be dismissed. The Court disagrees. The indictment clearly lays out the required elements. *See* Dkt. 1, at 1–2.

Under *Rehaif*, the United States only need meet two elements, both of which were outlined in the indictment and find support in the record. Therefore, the Court finds this argument unpersuasive.

**D. The United States is without jurisdiction under the Commerce Clause, Art. I, § 8, Cl. 3, because the single, private possession of a firearm, purchased in a person-to-person transaction, does not give rise to the nexus of interstate commerce; or, in the alternative, the United States is without jurisdiction as applied to Yates under the Due Process clause of the Fifth Amendment.**

Yates's final argument is reminiscent of his first argument and fails for the same reasons.

The bounds of the Commerce Clause were explored and defined by the Supreme Court in *Lopez*. Therein, the Supreme Court recognized three bases for federal laws under the Commerce Clause: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "activities having a substantial relation to interstate commerce, . . . *i.e.*, those activities that substantially affect interstate commerce." 514 U.S. at 558–59.

As already noted, § 922(g)(9), applies to "firearm[s] or ammunition which has been shipped or transported in interstate or foreign commerce." Critically, the firearm at issue

---

as to say he affirmatively knew his actions were illegal, but he does state that he did not know if they were actual legal. In short, *Ficke* does not help Yates here.

MEMORANDUM DECISION AND ORDER - 14

in this case was transported via interstate commerce—from Canada to Massachusetts to Idaho (at a minimum). As such, § 922(g)(9) is an appropriate expression of Congress's commerce power. *United States v. Jones*, 231 F.3d 508, 515 (9th Cir. 2000) (holding, "§ 922(g)(8) does not offend the Commerce Clause").

Yates challenges this general proposition further by arguing that because *he* did not "personally transport the firearm across state lines," Dkt. 33, at 15, the reach of the Commerce Clause does not apply to him. This argument is frankly absurd.

The Commerce Clause applies to more than just long-haul truckers crossing state lines. *See Lopez*, 514 U.S. at 558–59. It applies to things that have travelled in interstate commerce regardless of whether the person charged *personally* did the transporting. *Id*. This final argument fails as well.

## IV. CONCLUSION

The Court has thoroughly reviewed each of Yates's arguments. None have merit. Each has been litigated—in this District, at the Ninth Circuit, or at the Supreme Court—and soundly rejected. The Court sees no reason in this case to depart from solid precedent.

## V. ORDER

1. Yates's Motion to Dismiss Indictment (Dkt. 33) is DENIED.

DATED: October 22, 2021

_____
David C. Nye
Chief U.S. District Court Judge