UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BRANDON J. YATES,<br><br>    Defendant. | Case No. 1:21-cr-00116-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION AND BACKROUND

A grand jury indicted Defendant Brandon Yates on April 14, 2021, alleging one count of violating 18 U.S.C. § 922(g)(9). Dkt. 1. Early in the case, Yates filed a Motion to Dismiss the Indictment alleging, among other things, that § 922(g)(9) is unconstitutional—both on its face and as applied to him. Dkt. 33. The Court denied the Motion on October 22, 2021. *United States v. Yates*, 2021 WL 4942030 (D. Idaho Oct. 22, 2021).

A jury subsequently found Yates guilty of the charged offense following a two-day jury trial in November 2021. Dkt. 59. The Court sentenced Yates to 18 months imprisonment in March of 2022. Dkt. 78. Yates appealed on March 31, 2022. Dkt. 80.

In June of 2022, the United States Supreme Court issued its decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). This decision materially altered the legal landscape and opened the door to previously unavailable Second

Amendment challenges.

On appeal, Yates argued that, under *Bruen*, the Court's denial of his Motion to Dismiss the Indictment could not stand. Because the Court did not have the benefit of *Bruen* when it first ruled on Yate's Motion to Dismiss the Indictment, the Ninth Circuit vacated the ruling and remanded "for further proceedings consistent with [*Bruen*]." Dkt. 88.

Following remand, the Court and counsel held an informal telephonic conference to discuss the best way to proceed. The Court and counsel decided the best thing to do was to allow Yates to re-file his Motion to Dismiss the Indictment, this time accounting for the new caselaw after *Bruen*. One of the threshold issues, however, was whether the Government needed to enlist the services of a historian as an expert witness. The Court asked that the parties brief that issue first. After a ruling from the Court on that discrete issue, the parties would brief the more substantive matters.

The Government filed its brief. Dkt. 92. Therein, it argues that historical experts are not necessary to resolve this question because: (1) Courts are well-equipped to evaluate history, and (2) no court since *Bruen* that has been asked to review the constitutionality of § 922(g)(9)—or any other relevant subsection of that statute—has relied on retained historical experts. *See generally id.*

Yates then filed his brief. Dkt. 93. He reached the same conclusion. Noting that the Court (and the parties) can consult treatises, statutes, scholarly articles, and the like regarding history just as easily as listening to experts opine on the same subject, Yates postures that there is no need for experts in this case. He simply reiterates that it is *the Government's* burden to prove there is a historical tradition that supports § 922(g)(9) and

it can choose how it strives to meet that burden. The matter is now ripe for adjudication.

## II. DISCUSSION

The question here is whether the nature of this case obligates the Government to retain historians as experts. The Court finds the answer is no. To carry its burden of persuasion, the Government may, but need not, retain historical experts.

The Supreme Court explained in *Bruen* that, when it comes to Second Amendment challenges, it is the Government's burden to demonstrate that the challenged regulation is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2125. What better way to do so than enlisting someone who has professional training in identifying the legislative facts that comprise the "Nation's historical tradition of firearm regulation?" Both parties agree that such an individual would be helpful to the Court. But is the retention of such an expert a necessary prerequisite to carrying the burden of persuasion?

The Court recently issued a lengthy decision upholding the constitutionality of 18 U.S.C. § 922(g)(1). *United States v. Villalobos*, 2023 WL 3044770 (D. Idaho Apr. 21, 2023). Neither the Court, nor any of the parties, retained historical experts. Instead, the Court surveyed law review articles, books, and caselaw to reach its conclusion. It partially adopted the recitations of history set forth by sister courts. *Id*. at 11. Notably, the Court determined it was unnecessary to restate the analyses performed by these other courts "just for the sake of saying it did it in this case." *Id*. at n.15. The Court reaffirmed its ruling in a subsequent challenge. *United States v. Gallegos*, 2023 WL 3798347, at *3 (D. Idaho June 2, 2023). More than 120 other courts since *Bruen* reached the same

conclusion using similar methods. *See United States v. Bullock*, 2023 WL 4232309, at *1 (S.D. Miss. June 28, 2023) (collecting cases).

The Southern District of Mississippi recently broke stride with the rest of the district courts in the country on this question. *Bullock*, 2023 WL 4232309, at *1. It criticized other courts for failing to enlist an expert to help "sift through the historical record" and proceeding without the benefit of "an amicus brief from a historian." *Id*. It also criticized the Supreme Court for suggesting the use of historians, but then not employing any itself, for creating "erroneous" Second Amendment jurisprudence, and for being inconsistent about enforcing rights under the Constitution. *Id*. at *1–2, 34. After restating its understanding of the history and reviewing what the Government had proffered in that case, the *Bullock* court concluded the Government had *not* shown that America's historical tradition supported the disarmament of felons and that § 922(g)(1) was unconstitutional as applied to that defendant.

The Court is not convinced that the *Bullock* Court got it right—as a matter of law or historical fact.[1] More importantly for this order, the Court is also not convinced that *Bullock*'s concerns about historians are warranted.

The Government's task is to show that the regulation is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2125. It is within the Government's discretion to choose how to accomplish that task. *See Somavia v. Las Vegas*

---

[1] The fact that earnest and careful judges can pore over the same source material and reach opposite conclusions illustrates how difficult a standard "the Nation's historical tradition" can be. The Court, though admittedly not professionally trained in history, knows enough to be concerned that, as a field of study, history is not the bastion of objectivity and certainty that its proponents often assert it to be.

*Metro. Police Dep't*, 15 F.3d 1089 (9th Cir. 1994) (holding that, when a party has a burden to meet, the Court should "not . . . instruct [the party] how to meet that burden"). The Government may be concerned that, after presenting its case without a historian, the Court will rule against it and suggest that, if only it had retained a historian, it might have met its burden. The Court obviously cannot commit to any ruling at this time on the overarching question of the constitutionality of § 922(g)(9). Nor can it commit to whether a historian should be utilized in this specific case. To some degree that question depends on the arguments Yates raises in his forthcoming motion and the arguments the Government intends to make in response. The Court is satisfied, however, that a historian is not *required*. In other words, though the Court will undoubtedly review history in this case, it is constitutionally and practically capable of doing so without the help of a historical expert.

The *Bullock* court implied the lack of a historian, in part, led to its decision that § 922(g)(1) was unconstitutional. Notably, the Fifth Circuit Court of appeals recently struck down § 922(g)(8) as unconstitutional without employing historians—and without suggesting that the lack of a historian made any difference to the outcome. *United States v. Rahimi*, 61 F.4th 443, 456–51 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023). The Court agrees that whether historians should be utilized—and to what degree—is discretionary.

The Court takes its lead from the Supreme Court. In *Bruen*, the Court explained that "this historical inquiry that courts must conduct will often involve reasoning by analogy—a commonplace task for any lawyer or judge." 142 S. Ct. at 2132. And though the dissent there argued that judges are "ill equipped" to "resolv[e] difficult historical questions" or

engage in "searching historical surveys" *id*. at 2177, 2179, the undersigned agrees with the majority:

> The job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies. That legal inquiry is a refined subset of a broader historical inquiry, and it relies on various evidentiary principles and default rules to resolve uncertainties. For example, in our adversarial system of adjudication, we follow the principle of party presentation. Courts are thus entitled to decide a case based on the historical record compiled by the parties.

*Id*. at 2130 n.6.[2] The dissent in *Bruen*—and the *Bullock* court—felt that judges should not play the role of historian when they lack the professional training to do so. That may be true. In like manner, however, historians and other experts lack the constitutional authority to decide legal questions. Judges should not delegate their discretion to experts or historians. One does not need to be a linguist, a historian, or an expert in every field to be a sound judge. The parties (in any case) have a variety of ways and means to present their respective positions to the Court, but then it is the judge's duty to determine the law using as many, or as few, of those means as he or she deems necessary to fairly and impartially adjudicate the controversy.

The bottom line is that it is not the Court's duty to "sift the historical materials for evidence to sustain [the constitutionality of the regulation]. That is [the Government's] burden." *Id*. at 2150. Thus, the Court leaves the matter in the hands of the Government. It bears the burden of persuasion in this case. If it would like to hire an expert to provide a

---

[2] The *Bullock* Court shared this criticism fearing it would lead to judges cherry-picking historical materials that support their conclusions and ignoring contrary historical material. *Bullock*, 2023 WL 4232309, at *2, 4–5, 16, 24–25. But there is no reason to think that having an expert would solve that problem. In other words, a judge could "cherry-pick" expert testimony just as easily as he or she could cherry-pick law review treatises, books, caselaw, or other materials to support a particular conclusion.

report or amicus brief, it may do so. If it decides not to, that omission will not automatically doom its case so long as the historical analogues it offers are close, accurate, and persuasive. For its part, the Court will not appoint an expert.

Finally, the parties have discussed—again, informally—the cleanest way to bring the substantive issues back before the Court (i.e. the *type* of motion). The Court has determined that the most straightforward way to do this is for Yates to file a renewed motion to dismiss the indictment based upon the Ninth Circuit's remand and *Bruen*. The Court will extend the briefing deadlines from the standard criminal deadlines to mirror those in civil cases. *See* Dist. Idaho Loc. Civ. R. 7.1(b)–(c). The Court may or may not hold a hearing but will let the parties know as soon as it makes that determination. *Id*. at (d)(1)(B).

### III. CONCLUSION

As with any lawsuit, there is no single way for a litigant to present his or her case to the Court. A party should present the arguments, exhibits, testimony, sources, and caselaw that best supports his or her position. Experts can be a helpful tool in that toolbelt. But they are not a *mandatory* or *required* tool.

In sum, a historical expert is not *required* in this case. The Court takes no position on whether the Government should retain one to further its position. That decision is up to the Government.

Yates's opening brief is due on or before **September 1, 2023**. The Government's response is due on or before **September 22, 2023**.[3] Yates's reply on or before **October 6, 2023**.

DATED: August 7, 2023

David C. Nye
Chief U.S. District Court Judge

---

[3] If the Government decides to enlist a historian and needs more time to respond, it may contact the Court's law clerk to set a new briefing schedule.